**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EDWIN GARCIA,** | : | **No. 3:17cv1910** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **UNITED STATES,** | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM</u>

Plaintiff Edwin Garcia filed this medical malpractice action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80.  Plaintiff's complaint (Doc. 1) alleges that he sustained an infection from the implantation of a spinal cord stimulator at the Wilkes-Barre Veterans Administration Medical Center ("Wilkes-Barre VAMC").

Before the court for disposition is a report and recommendation (Doc. 70) from Magistrate Judge Karoline Mehalchick recommending that defendant's motion for summary judgment (Doc. 58) be granted and that this case be closed because plaintiff failed to oppose summary judgment with a legally sufficient expert opinion on the issue of causation[1].

---

[1] The Honorable Robert D. Mariani transferred this case to the undersigned on November 7, 2023.

Plaintiff proceeds in this matter *pro se*[2].  Plaintiff did not file objections

following the magistrate judge's report and recommendation.  Rather, plaintiff

filed an expert report from S. Michael Phillips, M.D. (Doc. 73) beyond the case

management deadline set for the presentation of expert witness reports.  A letter

accompanying the expert report indicates that plaintiff was attaching "documents

in support of [his] case."  Id. at p. 1.  Defendant construed the filing as an

objection and filed a brief in opposition. (Doc. 75).

A document filed *pro se* is to be liberally construed.  Erickson v. Pardus,

551 U.S. 89, 94 (2007)(citation omitted).  As such, the court will construe

plaintiff's letter attaching Dr. Phillips's report as a proper objection and consider

the newly filed expert report as evidence submitted in opposition to summary

judgment.

**Background**

The parties have not objected to the facts as set forth in the report and

recommendation.  After reviewing the record and finding no evidence of plain

---

[2] The complaint in this matter was filed by plaintiff *pro se*.  For a time, plaintiff was represented by counsel until that attorney was granted leave to withdraw by the magistrate judge while the motion for summary judgment was pending.  (Doc. 68).  Plaintiff also did not file a brief in opposition to the motion for summary judgment.  A filing from plaintiff's former counsel docketed as a brief in opposition (Doc. 63) is a response to defendant's statement of facts. (Doc. 59).  The magistrate judge ordered plaintiff to file a brief in opposition (Doc. 68), but plaintiff did not comply with that order.

error in the magistrate judge's recitation of the facts[3], the court thus accepts

those facts and adopts them as follows:

> Garcia was admitted to the Wilkes-Barre VAMC on April 21, 2015, for the surgical implantation of a spinal cord stimulator secondary to diagnoses of chronic low back pain with radicular pain and left lumbar radiculopathy. (Doc. 59, ¶ 1; Doc. 59-1, at 2-4). On April 24, 2015, Thomas W. Hanlon, M.D. ("Dr. Hanlon"), surgically implanted an 1192 Swift Lock Anchor Stimulator, manufactured by St. Jude Medical into Garcia at the superior endplate of the T-8 vertebrae. (Doc. 59, ¶ 2; Doc. 59-2, at 2-3). Garcia was discharged from the Wilkes Barre VA Medical Center later the same day. (Doc. 59, ¶ 3; Doc. 59-3, at 2-3).
>
> Garcia was readmitted to the Wilkes-Barre VAMC on May 5, 2015, with a diagnosis of leukocytosis/sepsis and was placed on IV antibiotics. (Doc. 59, ¶ 4; Doc. 59-4, at 2-7). Garcia also underwent an incision and drainage of an abscess at the surgical site of the simulator implantation on May 5, 2015. (Doc. 59, ¶ 5; Doc. 59-5, at 2-4). On May 7, 2015, Garcia was diagnosed with bacteremia with cultures positive for methicillin-susceptible Staphylococcus aureus ("MSSA"), and treated with IV Vancomycin, an antibiotic, and subsequently with Cefazolin. (Doc. 59, ¶ 6; Doc. 59-6, at 2-3). On May 8, 2015, a PICC line was placed in Garcia's right upper extremity. (Doc. 59, ¶ 7; Doc. 59-7, at 2-4). On May 11, 2015, Garcia was transferred from the Wilkes-Barre VAMC to Geisinger Wyoming Valley Hospital secondary to persistent infection and bacteremia. (Doc. 59, ¶ 8; Doc. 59-8, at 2-5). On May 15, 2015, Garcia was re-admitted to the Wilkes-Barre VAMC for continued antibiotic treatment. (Doc. 59, ¶ 9; Doc. 59-9, at 2-4). On May 21, 2015, Garcia was admitted to the Wilkes-Barre Community

---

[3] See FED. R. CIV. P. 72(b) 1983 Advisory Committee Notes ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record to accept the recommendation")

Living Center for the completion of IV antibiotic therapy.
(Doc. 59, ¶ 10; Doc. 59-10, at 2-9). Garcia was discharged
from the Wilkes-Barre Community Living Center on August
1, 2015. (Doc. 59, ¶ 11; Doc. 59-11, at 2-7).
[…]

On October 18, 2017, Garcia filed the above-captioned
FTCA action against the United States, alleging negligent
medical care by physicians at Wilkes-Barre[] VAMC. (Doc.
1).
[…]

On August 8, 2022, the United States filed the instant
motion for summary judgment. (Doc. 58).

(Doc. 70 at 2-5)(footnotes omitted).

**Jurisdiction**

As plaintiff has filed suit pursuant to the FTCA, the Court has jurisdiction

pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction

of all civil actions arising under the Constitution, laws, or treaties of the United

States.") and 28 U.S.C. § 1346(b)(1) ("[T]he district courts ... shall have exclusive

jurisdiction of civil actions on claims against the United States, for money

damages, accruing on and after January 1, 1945, […] personal injury or death

caused by the negligent or wrongful act or omission of any employee of the

Government while acting within the scope of his office or employment, under

circumstances where the United States, if a private person, would be liable to the

claimant in accordance with the law of the place where the act or omission

occurred.").

4

**Standard of Review**

## 1. Reports and Recommendations

When a party files objections to a magistrate judge's report and recommendation on a dispositive motion, the district court must make a *de novo* determination of those portions of the report to which objections are made. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3); <u>see</u> <u>also</u> <u>Henderson v. Carlson</u>, 812 F.2d 874, 877 (3d Cir.1987). This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. <u>Id.</u>

Although it was not available to the magistrate judge at the time she issued her report and recommendation, the court will consider Dr. Phillips's report in opposition to summary judgment on the issues of liability and causation since the court may receive further evidence in making its *de novo* determination. The court will also consider the SF-95 form[4] submitted by plaintiff as part of his administrative claim (Doc. 75, Exh. A) and offered by defendant in responding to plaintiff's objection.

---

[4] Standard Form 95 is used to present claims against the United States under the FTCA. <u>See</u> <u>Roma v. United States</u>, 344 F.3d 352, 358 (3d Cir. 2003).

### 2. Motions for Summary Judgment

Granting summary judgment is proper " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " See Knabe v. Boury Corp., 114 F.3d 407, 410 n. 4 (3d Cir.1997) (quoting FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir.1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to

6

admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett Corp., 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

Although the non-moving party in this case is proceeding *pro se*, it does not relieve him of the obligation under Rule 56 to produce evidence that raises a genuine issue of material fact.

**Analysis**

### 1.  Medical Malpractice Claims Under the FTCA

"The FTCA offers a limited waiver of the federal government's sovereign immunity from civil liability for negligent acts of government employees acting within the scope of their employment."  Rinaldi v. United States, 904 F.3d 257, 273 (3d Cir. 2018)(citing Berkovitz v. United States, 486 U.S. 531, 536 (1988); 28 U.S.C. §§ 2671–2680).  In an FTCA action, the district court must apply the law of the state, in which the alleged tortious conduct occurred. 28 U.S.C. § 1346(b); 28 U.S.C. § 2674; In re Orthopedic Bone Screw Prod. Liab. Litig., 264 F.3d 344, 362 (3d Cir. 2001)(citations omitted).  In this case, plaintiff's claim for medical

malpractice arising out of his treatment at the Wilkes-Barre VAMC is governed by the FTCA and substantive Pennsylvania law.

"[W]hen a plaintiff's medical malpractice claim sounds in negligence," under Pennsylvania law, "the elements of the plaintiff's case are the same as those in ordinary negligence actions." Toogood v. Owen J. Rogal, D.D.S., P.C., 824 A.2d 1140, 1145 (Pa. 2003). To establish a medical malpractice claim, a plaintiff must demonstrate "(1) a duty owed by the physician to the patient; (2) a breach of that duty by the physician; (3) that the breach was the proximate cause of the harm suffered; and (4) that the damages suffered were a direct result of the harm." Freed v. Geisinger Med. Ctr., 971 A.2d 1202, 1206 (Pa. 2009)(citation omitted).

As summarized:

> A plaintiff in a medical negligence matter is required to present an expert witness who will testify, to a reasonable degree of medical certainty, regarding the standard of care (duty); that the acts of the physician deviated from the standard or care (breach); and that such deviation was the proximate cause of the harm suffered.
>
> Expert testimony in support of the plaintiff's claim is an indispensable requirement in establishing a plaintiff's right of action, as the treatment and injury typically involved are such that the common knowledge or experience of a layperson is insufficient to form the basis for passing judgment.

Mitchell v. Shikora, 209 A.3d 307, 315 (Pa. 2019).

8

To establish causation, "a medical opinion need only demonstrate, with a reasonable degree of medical certainty, that a defendant's conduct increased the risk of the harm actually sustained, and the jury then must decide whether that conduct was a substantial factor in bringing about the harm." Rolon v. Davies, 232 A.3d 773, 777 (Pa. Super. Ct. 2020) (citation omitted).

Based on plaintiff's failure to proffer an expert that would testify to the element of causation, the magistrate judge recommended that defendant's motion for summary judgment be granted.  Plaintiff, however, has now provided expert opinions from Dr. Phillips.

 The expert report from Dr. Phillips supplies an opinion that plaintiff "experienced sepsis and wound dehiscence due to Staphylococcus aureus in association with a percutaneous implantation of a Neurostimulator device …" (Doc. 73 at 17, ¶ 1).  Moreover, Dr. Phillips opines that "[t]hese surgical complications are common and their occurrence per se does not establish a departure from acceptable levels of care.  However, to prevent the occurrence of these inordinately frequent Staphylococcal infections a number of prophylactic measures are indicated."  Id. at 17, ¶ 2.  Per Dr. Phillips's report, "[t]he surgeons failed to follow these recommendations; thereby, significantly increasing the probability of infection and contingent morbidity[,]" and "[t]his infection causally lead [sic] to the implant failure and significant physical and psychological

9

morbidity." Id. at 17, ¶¶ 3-4.  Furthermore, Dr. Phillips opines that plaintiff "did

not receive adequate instruction and materials to allow him to practice adequate

wound prophylaxis, increasing the probability of infection."  Id. at 17, ¶ 5.  Per Dr.

Phillips, the level of care fell below acceptable standards of care and led to

"profound negative consequences" including complications of wound healing and

pain and suffering.  Id. at 17, ¶¶ 7-8.  Dr. Phillips renders his opinions in the

report to a reasonable degree of medical certainty.  Id. at 16-17.

In the motion for summary judgment as originally filed, defendant argues

that plaintiff failed to timely serve an expert report to establish the elements of

negligence and causation to a reasonable degree of medical certainty.  In

responding to plaintiff's objection and the newly disclosed expert report,

defendant posits that the conclusions in Dr. Phillips's report vary from plaintiff's

administrative claim and from those allegations averred in the underlying

complaint.  Defendant also renews the argument that plaintiff failed to timely

serve the report to defendant's prejudice after years of prolonged litigation and

after numerous extensions were granted by the magistrate judge.  After careful

consideration, the court agrees with defendant that summary judgment is proper.

## 2. Variance in Plaintiff's Claims

Defendant argues that the conclusions reached by Dr. Phillips vary from Plaintiff's administrative claim and from the *pro se* complaint.  The complaint contains nominally more detail, so those allegations will be addressed first.

Plaintiff alleges malpractice by defendant's providers "due to the severity of the infection caused by the [VA]." (Doc. 1 at ¶ 1).  Per plaintiff's allegations, a spinal cord stimulator was implanted on April 24, 2015 and infection was confirmed by May 5, 2015.  Id. at ¶ 2.  In the complaint, Plaintiff alleged that the infection was caused by the failure to properly sterilize prior to the operation. (Doc. 1 at ¶ 2).  Moreover, plaintiff asserted that the surgical equipment was "dirty," and the operating room was improperly cleaned.  Id. at ¶¶ 4, 10.  As a result, plaintiff was left with permanent debilitating conditions as alleged.  Id. at ¶ 4.

Dr. Phillips's report diverges from plaintiff's averments and, at times, conflicts with plaintiff's theory of the case that he has advanced throughout this litigation.  Dr. Phillips opines, in relevant part, as follows:

> **The initial implantation was properly performed in two stages. There were no complications and lead placement was correct. Your subsequent home care may have been suboptimal due to your weight**; However, after developing drainage and signs of local infection, you returned to the VA. Your subsequent evaluation and care was excellent. After CT scan and other evaluations, you had the implant removed the next day.

11

> The infection was detected and properly treated
> expeditiously.

(Doc. 73 at 13 (emphasis added)).

Instead of supporting plaintiff's allegations in the complaint that the operating room and surgical equipment were not sterile, Dr. Phillips focuses on the alleged failures by the treatment providers to follow recommendations for prophylactic detection and treatment for Staphylococcal infection. Id. at 15. Dr. Phillips also opines that plaintiff's post-operative care instructions were deficient, stating that plaintiff "was not able to adequately practice wound hygiene, again increasing the probability of infection." Id. at 16. Additionally, Dr. Phillips faults defendant's treating providers for their "lack of sufficient preoperative attention to and treatment of the poorly controlled insulin dependent diabetes[,]" which, per Dr. Phillips, "led to increased metabolic stress, impaired healing and less favorable result of the neurostimulator implantation[.]" Id.

The conclusions reached by Dr. Phillips are also different from plaintiff's assertions in his administrative claim. (Doc. 75, Exh. A). At that time, plaintiff claimed he sustained an "infection caused internally by surgery," and that he underwent a "dirty operation." Id. (spelling errors corrected). The administrative claim form also attached a report from Thomas Alapatt, M.D. Id. Dr. Alapatt opined, "[m]ore likely than not, the infection that Mr. Garcia sustained was due to an infected neck that contained MSSA (Methicillin Sensitive Staphylococcus

12

Aureus) and E. Cola [sic]." Id. Dr. Alapatt also opined that it was his "medical opinion" that the implantation of the device caused an infection because "they were [sic] not properly sterilized prior to the operation." Id. However, Dr. Alapatt's report does not reference any alleged failure by defendant's providers to properly provide infection prophylaxis, give sufficient discharge instructions, or consider plaintiff's insulin dependent diabetes, as plaintiff's current expert suggests. As discussed by the magistrate judge, Dr. Alapatt's opinions were not made to a reasonable degree of medical certainty, as required by Pennsylvania law. (Doc. 70 at 12-14). Furthermore, per plaintiff, Dr. Alapatt was unavailable to issue another report or testify in this matter. (Doc. 56 at ¶ 4).

As summarized:

> Before bringing a claim in federal court under the FTCA, the claimant must give notice of the claim to the appropriate agency. A federal court lacks jurisdiction over claims not fairly presented to the federal agency prior to the initiation of suit. See 28 U.S.C. § 2675.
>
> "Although an administrative claim need not propound every possible theory of liability in order to satisfy section 2675(a), ... **a plaintiff cannot present one claim to the agency and then maintain suit on the basis of a different set of facts.**" Roma v. United States, 344 F.3d 352, 362 (3d Cir. 2003) (citation and internal quotations omitted).
>
> The notice of claim must consist of: **(1) a written statement sufficiently describing the injury in order to enable the agency to initiate its own investigation**; and (2) place a sum certain on the value of the claim/injury. Id.

at 362-63 (quoting <u>Tucker v. United States Postal Serv.</u>, 676 F.2d 954, 959 (3d Cir.1982)).

The purpose of the notice requirement is to give federal agencies the opportunity to evaluate claims and to settle them before they evolve into federal lawsuits.

<u>Boyd v. United States</u>, No. 3:05-CV-2033, 2006 WL 2828843, at *4 (M.D. Pa. Sept. 29, 2006)(Vanaskie, J.)(emphasis added)(formatting modified).

While the standard to amend pleadings is liberal under the rules of civil procedure, <u>see</u> <u>Arthur v. Maersk, Inc.</u>, 434 F.3d 196, 202 (3d Cir. 2006) (discussing FED. R. CIV. P. 15(a), 15(c)), the provisions of the FTCA must be strictly construed.  <u>Irwin v. Department of Veterans Affairs</u>, 498 U.S. 89, 94 (1990).  Section 2675(a) provides, in relevant part:

An action shall not be instituted upon a claim against the United States for money damages for […] personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, **unless the claimant shall have first presented the claim to the appropriate Federal agency** and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a)(emphasis added).

"Federal courts cannot assume jurisdiction over FTCA claims until the plaintiff has first presented his claim to the appropriate federal agency and the claim has been denied." <u>Priovolos v. Fed. Bureau of Investigation</u>, 686 F. App'x

150, 152 (3d Cir. 2017)(citations omitted). "This exhaustion requirement 'is jurisdictional and cannot be waived.' " Id. (quoting Roma, 344 F.3d at 362).

Administratively, plaintiff only presented claims related to the operating room, the surgical equipment, and spinal cord stimulator itself being unsterile. As advanced now, plaintiff's claim calls presurgical and postsurgical infection policies and procedures into question. Even under the broadest, most liberal construction of the SF-95 form, it is not reasonable for defendant to be on notice of a malpractice claim based on insufficient presurgical prophylaxis measures, discharge instructions, or diabetes education and management. Plaintiff has not offered any evidence that he timely presented these new claims through the administrative process so that the agency could have a fair opportunity to investigate these areas, consider resolving the case before litigation, or prepare a defense with the consultation of one or more appropriate experts. Therefore, no genuine dispute exists that plaintiff failed to exhaust administrative tort remedies regarding the claims articulated by Dr. Phillips in his report. Accordingly, plaintiff's objection will be overruled and the defendant is entitled to summary judgment as a matter of law for lack of jurisdiction.

### 3. Timeliness of Dr. Phillips's Report

Even if plaintiff sufficiently presented all of his claims administratively under

the FTCA, there is no question that Dr. Phillips's report is untimely and so prejudicial to defendant to warrant preclusion at this stage of the case.  The deadline for production of plaintiff's expert report was July 7, 2022 (Doc. 55) and plaintiff submitted the report on February 13, 2023. (Doc. 73).  The docket reflects that plaintiff's expert report deadline was extended on at least five occasions from an initial deadline of October 3, 2021 (Docs. 33, 40, 46, 48, 51, 55).  Plaintiff's final request to extend deadlines (Doc. 56) was denied by the magistrate judge in a lengthy order (Doc. 68) explaining plaintiff's lack of diligence in retaining an expert and securing an expert report.

A party must make expert disclosures at the times and in the sequence that the court orders. FED. R. CIV. P. 26(a)(2)(D). "Under Federal Rules of Civil Procedure 26 and 37, **a party that fails to disclose an expert witness or expert report 'is not allowed to use that information or witness to supply evidence on a motion**, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.' " Brown v. Robert Packer Hosp., 341 F.R.D. 570, 573 (M.D. Pa. 2022)(citing FED. R. CIV. P. 26(a)(2)(A), 26(a)(2)(B), 37(c)(1))(emphasis added). "The non-producing party shoulders the burden of proving substantial justification for its conduct or that the failure to produce was harmless." Tolerico v. Home Depot, 205 F.R.D. 169, 175 (M.D. Pa. 2002).  "A party's misconduct is harmless if it involves an honest mistake, coupled with

sufficient knowledge by the other party of the material that has not been produced." Id.

The decision to exclude evidence on a motion is within the court's discretion.  Newman v. GHS Osteopathic, Inc., 60 F.3d 153, 156 (3d Cir. 1995). Four factors have been identified for courts to consider when exercising that discretion:

> (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or wilfulness in failing to comply with a court order or discovery obligation.

Nicholas v. Pa. State Univ., 227 F.3d 133, 148 (3d Cir. 2000).

Under a consideration of the above factors[5], plaintiff has offered no explanation why Dr. Phillips's report was submitted seven months after the deadline or why such late disclosure is harmless.  Under the circumstances, plaintiff was aware of the deadline to exchange his expert report.  He requested that the deadline be extended several times.  Plaintiff served the expert report months after the magistrate judge denied his final request to extend deadlines.

---

[5] These considerations are often referred to as the Pennypack factors since they emanated from Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 904–05 (3d Cir.1977), overruled on other grounds, Goodman v. Lukens, 777 F.2d 113 (3d Cir.1985), aff'd, 482 U.S. 656 (1987).  See Tolerico, 205 F.R.D. at 177 (M.D. Pa. 2002).

This is not an example of an honest mistake. Rather, it reflects a willfulness in failing to comply with Magistrate Judge Mehalchick's orders.

Furthermore, defendant's arguments in opposition to plaintiff's objection reflect that the government had no knowledge of the theories of liability and causation as advanced in the untimely expert report. Additionally, the ability for defendant to cure the prejudice would require extraordinary efforts. For example, contesting the opinions in Dr. Phillips's report would likely require defendant to secure more than one qualified expert to rebut those opinions due to the number of specialties involved in the aspects of plaintiff's care. Defendant would have to consider securing expert testimony from a hospitalist along with experts from the fields of neurosurgery, epidemiology, and endocrinology. To the extent that plaintiff's care was handled by nurses, defendant would also have to consider securing an expert in that field.

The court also recognizes that permitting such late disclosure of an expert report with different theories of liability and causation would lead to a significant delay in the readiness of this case for trial. Defendant would need time to secure one or more experts. Experts are also generally deposed. Thereafter, even assuming there are no challenges to Dr. Phillips or defendant's experts, defendant might seek another opportunity to obtain summary judgment with the

attendant time necessary for the parties to brief the issues and for the court to rule.

Considering the above, the court will not entertain Dr. Phillips's untimely report as part of plaintiff's opposition to defendant's motion for summary judgment. That returns plaintiff to the position he was in before the magistrate judge. He cannot put forth a legally sufficient expert opinion to establish that his injuries were caused by defendant's breach of the standard of care, and summary judgment in favor of defendant is thus appropriate.

**Conclusion**

For the above-stated reasons, the court will overrule plaintiff's objection (Doc. 73) and adopt the report and recommendation of Magistrate Judge Mehalchick. (Doc. 70). Defendant's motion for summary judgment (Doc. 58) is **GRANTED** and the Clerk of Court will be directed to close this case. An appropriate order shall issue.

Date: <u>11/30/2023</u>                    *s/ Julia K. Munley*
                                                  **JUDGE JULIA K. MUNLEY**
                                                  **United States District Court**